Good morning counsel. Welcome to the fifth circuit. I think you can see that your panel today consists of me, Judge Dennis, Judge Wood, and Judge Higginson. And your case which we will call for oral argument is United States of America v. Rodolfo Rudy Delgado. We'll hear first from Michael Gross, counsel for Delgado. We don't have any sound yet for you, Mr. Gross. Can you turn? Still not coming across. All right. Dwight? Don? Yeah. No, I don't mean you, Don. I meant Don Geisler. Sorry. Oh, sorry, Mr. Gross. We still cannot hear you. In the lower left hand, you'll see the mic icon. Can you check to make sure it's not muted? And if it is not muted, try to hit the up arrow and select your microphone. Do you have an external microphone that perhaps has a mute button? Still cannot hear you, sir. No. He worked on it. We put him in the waiting room. This happened yesterday with Jack Weiss, Don. Sure. From this end, what we can do. Somehow we had this yesterday, but we did then later get noise. Mr. Gross, don't worry. Don't be upset. We'll get it fixed. We have time. Don, it worked in the little separate room, but now it's not. Can you take it back? Actually, it worked before we put him into the waiting room. What I'm thinking is, Kim, do you have him? You want me to call him? Yes, please. Should he leave? And reconnect. And reconnect. Yeah, we can try that. Sorry, Judge, he was working before we put him into the waiting room. Not sure what happened. We have only three cases today. Maybe we can. Did we pass this one? Let's try it again. I hope that works. Great. That was a trick. Thanks for y'all's patience. Okay, may it please the court. My name is Michael Gross. I represent the appellant in this case, Rodolfo Rudy Delgado, on this direct appeal from the Western District of Texas, San Antonio Division. With the court's permission, I'd like to orally argue points of error one through seven and rely upon my brief for the remaining points of error. I've reserved five minutes for rebuttal. In this particular case, where an attorney is claimed to have given bribes to Judge Delgado, the appellant, the attorney was the only one to testify. The attorney made it clear when he testified there was no agreement for Judge Delgado to do anything on his cases. There was just a hope for favorable outcomes, that the judge always had discretion in his cases, that he never bribed the is, is that evidence sufficient to show an agreement for bribery if there's no quid pro quo meeting in the minds and merely anticipation and not a promise? In count one of the indictment that dealt with conspiracy to commit federal program bribery, it was claimed that, well, of course, you know, the elements of it, the first element required a value of $5,000 or more. I've been unable to find a case in the Fifth Circuit, I don't think the government has either, to show what the value of a $5,000 PR bond is. Because in counts two, three, and four, which deal with clients A, B, and C, there was a $5,000 bond given by Judge Delgado to the attorney's clients. One question for the court to decide is what is the value of a $5,000 PR bond? It was clear in the record of trial, I believe at page 2167, that a PR bond has no cost. There's no cost for PR bond, it merely takes a signature and a promise to appear. Well, with a personal reconnaissance bond in Texas, the attorney testified that that value then would be no cost and merely a signature. Is the $5,000 face value of a PR bond the value of it? The argument and the evidence of trial we respectfully suggest was that the $5,000 face value of the PR bond is not the value of it, especially since there's no cost and merely a signature bond. Your client was convicted, I think, of eight counts, four different offenses. So you began by saying, addressing the 371, no agreement, but you're shifting now to the 666 transactional amount. You're happy to discuss both? Yes, Your Honor, especially since count one, that's a great point, Judge Higgins. Count one dealt with the conspiracy, 371 and 666. Although he didn't testify, his wife testified and so the jury heard the argument extensively. These were just ethical lapses. They were ex parte contacts he regrets, but no money, no exchange. That was the defense the jury heard. Mr. Perez was under cross-examination forever and there were recordings that are pretty inculpatory, at least in terms of inferences. So I have a more difficult time accepting that the jury couldn't infer from at least Perez's redirect that there weren't bribes here and an agreement to take money in exchange for PR bonds. But I did want to ask more questions about the transactional amount. So let me phrase a question. Marmaleo is our best case. But the jury would have been free to say, well, Mr. Perez's clients were willing to risk $5,000. So that's a perfectly good way to value what it is to be let free. What's wrong with that inference that the jury could draw? Because the $5,000 amount on the PR bond, Your Honor, does not necessarily mean that there's a liability of $5,000 for failure to appear in the state of the bond system. For instance, there's a judgment, Nisi, that someone's going to be liable for the full bond amount, just like you would, as opposed to what you would have in a detention hearing, for instance, in federal court. Right. But Marmaleo is our precedent. And there it's a conjugal visit. These are really intangible benefits to value. And our court said there are methods of valuation, plural. It's not just the bribe amount. And so why not say, hey, it was valuable enough that they'd be willing to lose $5,000. Why can't the jury, what's the case that says a jury can't value it that way? What case doesn't suffice under 666? I have not been able to find a case, Your Honor, that talks about PR bonds generally. And as far as the case concerning valuation, like the case you just discussed, Your Honor, with the conjugal visit, we have contrary evidence in the record in this case, because it was clear at page 2167 of the record that there was no cause. It was merely a signature bond. And it's our position that the valuation should be what would the attorney charge to get you a PR bond, not what the face value of the PR bond is. Okay. So you're not saying it's the bribe amount, it's 250. You're saying it's Texas law for what the PR bond... Correct, Your Honor. Unless they look at the value of the, or the amount of disposed bribe, which was $260, Your Honor, for the purchase of the wood. The other position... You cited the Carpenter Hobbs Act case fairly extensively. Do you agree that there's no law importing Hobbs Act explicitness requirement into 666 law? I agree with that, Your Honor. I've not found a case that says the Hobbs Act into the 666. I used it as an analogy, Your Honor. Yeah. It's the closest case I could find, Your Honor, on where you need a, for an existence of an agreement, you need a meeting of the minds. In other words, the quid pro quo and an unambiguous, a clear and unambiguous promise for official action. That was the best thing I could find, Your Honor, on the analogy of this case. Yeah. Now, with respect to whether or not there was a meeting of minds and a quid pro quo, it was clear that the attorney, Mr. Pettis, made it very clear that there was no quid pro quo, that there was no understanding and no agreement. In fact, with the pickup truck that was involved in this case from November of 2008, the $15,000 pickup truck, regarding that pickup truck, the attorney made it very clear that there was no agreement with Judge Delgado about any case because the attorney never asked Judge Delgado to do anything about a particular case regarding that $15,000 pickup. You know, the attorney was asked during trial, well, don't you have, didn't you have Judge Delgado on the hook then for in effect stealing that $15,000 pickup from you? And the attorney said, no, I did not feel I had him on the hook for it. I did not feel as if that, and I did not get anything out of the sale of that $15,000 truck. You know, it's not clear from the briefs, but I think I'm right having looked at the record that Mr. McCrum, your predecessor actually won on the truck. If I remember the district court struck paragraph 31 as a valid overt act. So the jury didn't even have the truck as an overt act when it went back, but it had these wood sales for 250 instead of market value 20. And why couldn't that suffice to support the 371 conspiracy? With respect to the buying of the wood, the attorney made it very clear that buying wood from Judge Delgado did not mean the attorney was going to get help on any cases. And the term buying wood was not code for a bribe. You know, at pages 2318, 2319, and 2320 of the record, the attorney made it very clear buying wood did not mean the judge was going to give him help on cases and was not code for a bribe. And I think I said this to the composer earlier, admittedly, the cross was, it was quite a powerful cross redirect, et cetera. But on redirect, the government asks Mr. Perez directly, why didn't you say when you handed him $250, here is bribe money? And Mr. Perez answers, because I didn't want anyone to know. The interesting thing about that, that particular part of the testimony you're on, which to be fair, is not consistent with the cross of the attorney. That attorney made it clear that those conversations you're on were private between he and Judge Delgado. He didn't think there was anybody listening in. He wasn't under pressure about being careful what he said around anybody. It was just the attorney and Judge Delgado. And the attorney had no good answer why he just didn't use the word bribe or say, I need, I want you to do this on this particular case. And so true, the conversations have interesting dialogue in them. However, the attorney could not give a good answer to Mr. McCrum on why didn't you just say bribe? Or why didn't you just say, look, you don't have discretion on this case. I want you to give this PR bond to client A. And the attorney didn't have a good answer for why that was. However, as you said, Judge Higginson, the attorney did have good answers to Mr. McCrum on cross with the fact that there was no understanding or consideration or promise regarding this, that these purchases of the wood, there was no agreement for help on any particular cases. All I had was a hope of some type of favorable help down the road. But certainly the Judge Delgado always had discretion, regardless of the buying of the wood. The attorney said, I never bribed Judge Delgado. And there was certainly no quid pro quo or payoff of Judge Delgado. It's our position, Your Honor, that the purchases of the firewood were not bribes as required by the Carpenter case. In other words, there was no existence of an agreement as required in the Carpenter case, because it was not a quid pro quo that was clear and unambiguous. Count four, by the way, covered the donation to Judge Delgado's campaign. Count four dealt with client C for the attorney, and it was a $5,500 cash that was given to Judge Delgado in a sealed envelope. Now, the attorney was very clear on the record at pages 2392, 2403, and 2415 to 18, that he wanted to donate to Judge Delgado's campaign. I may be wrong, but was the envelope introduced into evidence? And if so, did it contain a case number written on it? I don't recall that, Your Honor, but the testimony was very clear that the envelope was sealed. It was undisputed on then. If it had a case number on it, and I may be completely wrong, we'll hear from the government, that would make no sense in terms of a campaign contribution, would it? It would not, Judge. I don't recall any testimony at all about a case number on the envelope. All I do recall is that Judge Delgado had been running for the campaign for the appellate court there in that area, and the attorney did not practice before that appellate court, and he took that sealed envelope to Judge Delgado after telling Judge Delgado that the attorney wanted to donate to the campaign. Judge Delgado took the sealed envelope, and then later, a few days later, when he opened the envelope, he realized there was more money in there than was allowed by a contribution, because it was $5,500 rather than $5,000. And so Judge Delgado immediately contacted the attorney and said, look, you need to give me a check instead of this cash, and it has to be for $5,000. It can't be more than the $5,000. So it's our position, and my memory from reading through the record, Judge Higginson, is that I did not see any kind of notations anywhere on the envelope regarding a particular case. It was also a very short conversation there on January 17th of 2018. The transcript that I saw didn't seem to indicate any particular case either. Before your time runs out, I just want to ask one question about sentencing. At sentencing, and then in your brief to us, you didn't object that the truck should be excluded from the 2C1.1 benefit received, correct? You didn't say it should at minimum be two levels down because the truck can't count as a benefit received. That wasn't an objection at sentencing, and it wasn't presented to us. I believe that's correct, Your Honor. I recall the benefit value being $45,500. I seem to recall the $15,000 on the pickup being included on that. I don't recall putting any objections about consideration of the truck in there. And so with that, I see my time is almost up. That's all I had, unless anyone had any other questions. Ms. Rose. Ms. Catherine Pick. Good morning. May it please the Court, Catherine Pick on behalf of the United States. Your Honors, Delgado urges this Court to reweigh the jury's measurement of the evidence. That is not the proper standard of review, and that is not this Court's task. Instead, this Court views the evidence in the light most favorable to the verdict and affirms the conviction if any rational trier of facts could have found the central elements of the crime beyond a reasonable doubt. This Court can and it should affirm all of Delgado's convictions because ample evidence supports them. Further, this Court should affirm Delgado's sentence because the District Court properly calculated his base offense level. As to Delgado's first conviction of conspiracy, the evidence shows that Perez and Delgado were involved in a conspiracy that spanned a decade, where Delgado accepted bribes in exchange for issuing bonds and favorable rulings for Perez's clients. This conspiracy started in 2008 with the $15,000 value of the truck. Once Delgado accepted the truck, that started the decade of issuing favorable rulings and bonds. Ms. Pick, again, it's not in the briefs, but am I wrong that actually at the close of the government's case, the government agreed with the District Court that they should redact paragraph 31, that there was no evidence that the truck actually was a bribe? Wasn't that portion of the indictment redacted as an overt act before the indictment went back to the jury? I can't say for certain, Your Honor. I believe you're correct, but I can't say for certain. I don't remember that. If I am correct, then you're saying that the conspiracy spanned decades. Actually, the government agreed that they hadn't proven that it started in 2008. I disagree, Your Honor. We did prove that it first started with the truck, that he accepted this truck. Once he accepted this truck, he continued Montano's motion for revoked hearing for four years. From that acceptance of the truck, Perez's appearance before Delgado went favorably. He provided the FBI with a list of clients that he had obtained bonds and favorable rulings for. I mean, I guess any overt act would probably count to support the 371. So the larger question and the thrust of, I think, Mr. Gross's argument is you had a cooperating co-defendant and you had tons of tapes, and yet he never says he bribed the guy. He never uses the word bribe. I mean, he's the government's witness and he's on the stand forever, and he actually doesn't say he bribed him. We have to rely on sort of stretched inferences, don't we? Well, I disagree with stretched inferences, Your Honor. We have these videotapes and we have them showing that Delgado knew what Perez was asking for. Perez went to him and said, hey, can I get some bonds for my clients? Can I get favorable rulings? Perez testified repeatedly, Your Honor, throughout his testimony on direct and cross-examination that I was going to Delgado to seek PR bonds. That was what I was doing when I was paying these inflated payments for wood, for the beer. All of that shows, Your Honor, through Perez's testimony, through the audio and videotapes, through the case files that corroborate that Delgado was aware that he was issuing these bonds after accepting these bribes. And the jury found that, Your Honor, viewing all of this evidence in the light of- I'm just asking you to know the record. Why do you think that the cooperating defendant, who's on the stand forever, could never say it was a bribe? And do you have a thought on that? No, Your Honor. I think I would go as to say he wasn't- I don't think he was- the government wouldn't win any awards for being the best witness, Your Honor, but he did provide testimony, truthful testimony that showed I was seeking these PR bonds. By paying these bribes, that was my intention, was to get these PR bonds to our client. And viewing that at his testimony and all of the other evidence, Your Honor, which included the case files, the audio and video, that showed, Your Honor, that there was a conspiracy, that there was an overt act by one or two members of the conspiracy, and that Delgado was aware of the conspiracy's purpose. So viewing that evidence in the light most favorable to the verdict, Your Honor, there's ample evidence to affirm Delgado's conviction for conspiracy. Moving on to the federal program bribery convictions, I know, Judge Higginson, you have questions you asked defense counsel about the transactional element, and you're correct that Marla Mayhoe is our starting point. This court stated in Marla Mayhoe that to value intangible items, you should use traditional valuation methods. Now, looking at a bribe amount may be one method, but it's not the only method. That was the method used in Marla Mayhoe, right? Yes, Your Honor, that is correct. Using that method, it wouldn't suffice here, correct? If you use the bribe amount, it wouldn't suffice for two of the convictions, but here, Your Honor, under Marla Mayhoe, just the court, just because it used the bribe amount, this court hasn't said that's the only method to use, and other circuits have held the same. Other circuits have recognized that using the bribe method is a straightforward application, but it's not the only method, and that when you look at the purpose of the statute, how expansive it is, there can be... What's the limiting principle for a jury? You know, here, what they received was freedom. It just goes to the jury, and they get to put some dollar value to freedom? No, Your Honor, they didn't. What we instructed and what the jury instruction has from the Fifth Circuit pattern jury is the jury was instructed on the word value, which means the face, the par, market value, or cost price, either wholesale or retail. We argue to the jury, you can find that we met the transactional element by the face of the PR bonds, which were $5,000. It's at least worth $5,000 because it's also a defendant's freedom, and you could... We argue that a defendant's freedom is worth at least that amount, so I think it's twofold where we have one misintangible item that has a value of $5,000, and you go a step further and said, well, yes, we're talking about a defendant's freedom, and it's worth at least that, and here we put it to the jury, Your Honor, and the jury found that we met the transactional element, that we provided sufficient evidence to show that, and since viewing that evidence in the light most favorable to the verdict, this court can somehow memory that the envelope had a case number written on it? No, Your Honor, what you're referring to is the post-it note. In that January 28th bribe with the envelope, Delgado and Perez were talking about Perez's case client, and Delgado instructed Perez, here, write the case number and the defendant's name on a post-it, so he did that, and he handed him the post-it note, and then he posted note refers to the case that Perez was asking for a PR bond. He hands them both at the same time? I believe, if not at the same time, you know, within minutes. Delgado had instructed, that's what I was remembering, thank you. Yes, and that was later found in Delgado's office when the FBI went to go search his office. Moving on to the travel act violations, the evidence shows that the phone calls and the text message were used to help facilitate the conspiracy, and viewing that evidence in the light most favorable to the verdict, this court can also affirm those convictions as well. Moving on, if this court has no further questions on the travel act violation convictions, I'll move on to the obstruction of justice convictions. Your honor, the evidence shows that Delgado knew of the investigation, and this is the evidence that shows we have Juan Hinojosa, he testified that he told Delgado, you're being investigated by the FBI for selling overpriced firewood. Carlos Guerra testified that Juan Hinojosa told Delgado that I know an inside investigator, and he's confirmed that there's an investigation. Now after that conversation, the next day, or two days after, he has a hearing, Delgado has a hearing with Roberto Guerra, and he asked him to go visit him in his chambers under the guise of discussing state business. But when they got into the chambers, Delgado asked Roberto Guerra, I hear that the FBI is looking into me for selling overpriced wood. Roberto Guerra was in shock, and he exited the chambers quickly. Hours after that interaction with Roberto Guerra, Delgado text Perez, and he states, I just opened up the envelope. This is a campaign contribution, it needs to be in check form. Now, your honors, that was 12 days after Delgado had accepted the bribe from Perez, and Delgado knew that was a lie. He knew that was a that only an individual could donate $5,000. Second, he knew that there was a cash limit of $100. And third, he knew that that wasn't a campaign contribution, but it was a bribe, because in the context, he was discussing the case with Perez and assuring him that he would release his client out on bond. Now, your honors, that he corruptly sought to impede the investigation, and he did so because one, that was creating a false narrative, that was creating a record in his defense, and the case agent testified that he had to cut his investigation off once he learned that Delgado was aware of the investigation. Viewing all of this evidence into the likeness favorable to the verdict, your honor, this court can affirm Delgado's obstruction of justice conviction. If this court has no questions about that $500 base offense level. Your honor, the district court properly calculated the base offense level. It relied upon the value of the truck, and it relied upon the base values of the bond. And by a preponderance of an evidence, this was a proper calculation, your honor. It was reasonable and light. The guidelines instruct to obtain the greatest value. So there was no, there was no clear error, your honor, and this district court could, this court could probably, could affirm Delgado's sentence. So even if there wasn't proof beyond a reasonable doubt of the truck as a bribe or a benefit received, you're saying because the standard is preponderance and they didn't object to it, and they aren't arguing on appeal? Correct, your honor. Yes, by a preponderance of an evidence, the district court, it was a reasonable calculation. But again, your honor, with the truck, just to clarify or clear up any confusion, we argued at trial that the conspiracy started with this truck, that there was an acceptance of this truck and that from that truck, there were favorable outcomes and benefits. And that kind of started off this relationship between Delgado and Perez. If this court has no further questions for me, I'll briefly conclude. And again, I want to acknowledge my inadvertent misstatement in my brief and I'll rest on my 28J if this court has any other questions. If not, this court should affirm and can affirm viewing the evidence in the light most favorable of the verdict, all of Delgado's convictions and his sentence. Thank you, Mr. Pick. Mr. Gross, you have five minutes on the level. Thank you, your honor. You all can hear me, right? Yep. Great. It's fair to say a reading of the record in this case shows that the FBI or the agents put a lot of pressure on the attorney to say, yes, I did bribe the judge and tried to get the attorney on these communications, these surreptitious recordings with Judge Delgado to get him to say it was a bribe and get him tied in on a particular case. What's interesting in the record of trial, your honors, especially at page 2326 of the record, the attorney who was co-defendant and cooperating with the government was asked by defense counsel, you had not bribed the judge. Would you agree? I would agree with that. That's the government's own witness who had been pressured forever by the case agents to say it was a bribe. And not only did he refuse to tell the agents it was a bribe, but also during trial on page 2326, when he's talking to defense counsel across, he said he agreed he had not bribed the judge. With respect to those recordings that were taken at the request of the agents on December 13th, 2016, November 27th, 2017, and January 17th, 2018, this cooperating co-defendant who was cooperating with the government was asked by defense counsel about those recordings where he, the attorney had confirmed that all he had was a hope of help on cases, that the judge had discretion to do whatever he wanted on his cases. There was no specific promise. And then on pages 2322 and 2323 of the record, he's asked about, the attorney's asked about recordings. And he says, as a matter of fact, the recordings that you made of the judge, it's consistent with the fact that there was no understanding, no specific promise. And the defense attorney says, yes, that's correct. Even on the recordings, it was consistent. There was no specific promise or understanding. It's our position that that's, that is insufficient evidence of a bribe on the character. Certainly no meeting of the minds, even when the attorney, who's hoping for good relief from the government after his testimony in this case, doesn't even admit at trial that there was a bribe, does not admit at trial that there's a specific promise, even on the recordings. With respect to the PR bond amounts that with the last few minutes that I had, I just wanted to reaffirm once again, that it's our position that the value of those PR bonds is the amount of money, the $260, not the face value of the bond amount. And it's our position that under the Marmolejo case, that's respectfully how this court should value the payments made for the $5,000 PR. In the trial, Perez did say he could have bought that same amount of wood for about $20, but instead he gives $250, puts it in all your places like the beer, beer bag or whatever. And then he gets favorable outcomes for his clients. Why wouldn't that alone allow a jury to infer they've been in agreement? Because your honor of, of what the attorney said about no understanding, no meeting of the minds consistently throughout his testimony. Yeah. Okay. I agree that that's odd when the judge says, I I'm in a Mexican mood today, for instance, meaning he wants to go secky. And and then there's money in, in those six packs or whatnot. However what the key factor is, I believe for this court is that this attorney had multiple opportunities to tell the agents that yes, that was a bribe. That's why I put that money in there. And certainly had multiple opportunities of trial to say that. And he said, no, I did not bribe the judge. Unless there are any other questions, we're respectfully requesting the court reverse the judgment and sentence to remand the case back for a new trial or a new sentencing hearing. Thank you all very much. Thank you. Thank you, sir. That case will be submitted.